1  Erin Rose Ronstadt, SBN 028362
   Kevin Koelbel, SBN 016599
2  OBER & PEKAS, PLLC
   3030 North 3rd Street, Suite 1230
3  Phoenix, AZ 85012
   Phone: (602) 277-1745
4  Fax: (602) 761-4443
   erin@oberpekas.com
5  kevin@oberpekas.com

6  *Attorneys for Plaintiff*

7

8  **IN THE UNITED STATES DISTRICT COURT**

   **FOR THE DISTRICT OF ARIZONA**

9

10 Felicity Fischer-Sibrel, a married woman,      **Case No.**

                              Plaintiff,
11

12 v.                                             **COMPLAINT**

13 Manpower Companies Staff Employee              (Jury Trial Requested)
   Health and Welfare Plan, No. 518, an ERISA
   benefit plan; The Prudential Insurance
14 Company of America, a plan fiduciary; and,
   ManpowerGroup, Inc., an employer and plan
15 administrator,

16                             Defendants.

17

        For her claims against Defendants Manpower Companies Staff Employee Health and
18
   Welfare Plan, No. 518 (the "Plan"), The Prudential Insurance Company of America
19
   ("Prudential"), and ManpowerGroup, Inc. (f.k.a. ManPower, Inc.) ("MPG" or
20
   "ManpowerGroup") (collectively "Defendants"), Plaintiff Felicity Fischer-Sibrel ("Ms.
21
   Fischer-Sibrel" or "Plaintiff") alleges as follows:
22
                    **JURISDICTION, VENUE AND PARTIES**
23
        1.      This is an action for failure to pay short-term disability ("STD") benefits
24
   under a salary continuation plan and for failure to approve a claim for long-term disability
25
   ("LTD") benefits.
26
        2.      All claims related to Ms. Fischer-Sibrel's STD benefits are subject to Arizona
27
   State law.
28

**OBER & PEKAS, P.L.L.C.**
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

3.      To the extent that any claims arising from the salary continuation plan providing STD benefits are preempted by ERISA, Ms. Fischer-Sibrel pleads those claims in the alternative as subject to ERISA.

4.      All claims related to Ms. Fischer-Sibrel's LTD benefits are subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

5.      To the extent that any claims are preempted by ERISA, Ms. Fischer-Sibrel pleads those claims in the alternative as subject to ERISA.

6.      MPG is the Plan Sponsor, Plan Administrator, and Employer.

7.      At all relevant times, Prudential administered claims for MPG under the Plan, acted on behalf of the Plan, and acted as an agent for MPG.

8.      The Plan is a single-employer welfare benefit plan and is maintained for the exclusive benefit of eligible employees of MPG. The Plan provides a comprehensive selection of employee welfare benefit programs, including but not limited to, medical, dental, vision, life, STD (the "STD Plan") and LTD (the "LTD Plan").

9.      Prudential fully insures LTD benefits under the Plan with a Policy, Group Contract Number G-46683-WI.

10.      Prudential also administers MPG's Family Medical Leave ("FML") benefits and STD benefits, which are funded from MPG's general assets.

11.      Ms. Fischer-Sibrel was a participant and beneficiary of the Plan as an employee of MPG.

12.      Ms. Fischer-Sibrel is a married person. She currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times during which she was a participant in the Plan.

13.      The Plan and MPG, a large corporation, are headquartered in the state of Wisconsin, although MPG is a multinational human resource consulting firm with over 3,900 offices across 80 countries and territories, including Arizona. Prudential has its principal place of business in the state of New Jersey. Defendants Prudential and MPG are

licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14.   Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

15.   Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

16.   This Court has supplemental jurisdiction of state law claims under 28 U.S.C. § 1367.

17.   MPG has a duty to administer the Plan prudently and in the best interest of all Plan members and beneficiaries. At least to LTD benefits, Prudential acted as MPG's agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Ms. Fischer-Sibrel is informed and believes that MPG and Prudential are either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2); and/or a "deemed fiduciary" pursuant to 29 U.S.C. § 1002 (21)(A); and/or a "designated fiduciary" pursuant to 29 U.S.C. § 1105(c)(1)(B).

18.   Prudential had actual or apparent authority to act as a fiduciary on behalf of the Plan.

19.   Prudential's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

20.   Prudential acted under a structural conflict of interest in both administering and paying out LTD claims under the Plan.

## GENERAL ALLEGATIONS

21.   All previous and subsequent paragraphs are incorporated by reference.

*Establishment of the Plan and Relevant Plan Provisions*

-3-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

22.     On information and belief, MPG established the Plan, which was restated on January 1, 2009. Under the Plan, MPG offers both STD and LTD coverage to eligible employees.

23.     Ms. Fischer-Sibrel is informed and believes that the STD Plan is a payroll practice exempt from ERISA. It is designed to continue all or a portion of an employee's pay when the employee is prevented from working due to a pregnancy-related condition, an accidental injury, or an illness. 29 C.F.R. § 2510.3-1(b)(2) provides:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" **shall not** include – (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment.).

24.     STD benefits were paid to Ms. Fischer-Sibrel through MPG's payroll system. When she did receive STD benefits on prior claims under the Plan in 2012 and 2013, those benefits were paid through payroll as income.

25.     On information and belief, the STD Plan is self-funded by MPG from its general assets.

26.     The MPG Summary Plan Description for its STD Plan states, "[y]our benefit will be paid by ManpowerGroup during the regular payroll cycle." And, when MPG switched its STD Plan's third-party administrator from Prudential to Liberty Life Assurance Company of Boston, MPG assured its employees, "[y]our benefits are remaining the same," and, "[y]our STD benefit will continue to be paid to you by ManpowerGroup and your benefit check will be distributed to you in the same manner in which you are currently receiving your paycheck . . . Taxes and other deductions will continue to be deducted from your STD benefit." In short, STD benefits are paid as "normal compensation" through the

-4-

standard payroll system from MPG's general assets. Therefore, the STD Plan is a payroll practice exempt from ERISA.

27.     When confronted with information to support that the STD benefits are wages exempt from ERISA, MPG denied that its STD Plan is a payroll practice. When Plaintiff's counsel explained the reasons and accompanying law supporting the conclusion that the STD Plan is exempt from ERISA, MPG still persisted that the STD Plan was subject to ERISA.

*28.*     MPG's mere labeling of its STD Plan as subject to ERISA does not determine whether ERISA applies. That a disability program may be set up as part of a larger welfare benefit program, which is the case here, does not matter. *See Alaska Airlines, Inc. v. Oregon Bureau of Labor,* 122 F.3d 812, 815 (9th Cir. 1997).

29.     MPG paid Prudential to administer the STD Plan under an administrative services agreement (the "Agreement"). Under this Agreement, Ms. Fischer-Sibrel is informed and believes that Prudential agreed to provide initial claim determinations and final appeal determinations. In exchange for these services, Ms. Fischer-Sibrel is informed and believes that Prudential received monthly service fees and other compensation.

30.     The Agreement is referenced in the claim file, and Ms. Fischer-Sibrel, through counsel, requested it from MPG. However, MPG refused to provide it unless Ms. Fischer-Sibrel's counsel signed a confidentiality agreement. To date, Ms. Fischer-Sibrel's counsel has neither signed a confidentiality agreement nor received the Agreement, which presumably defines the fiduciary and administrative responsibilities of MPG and Prudential, discusses the funding scheme for STD benefits, and contemplates Prudential's ongoing responsibilities following MPG's firing of Prudential as its claims fiduciary and subsequent hiring of Liberty Mutual.

31.     On March 18, 2016, MPG's Senior Leave Analyst, Amy Lawrenz, requested from Prudential a copy of the signed Agreement. Prudential's Complex Senior Appeal Specialist, Angelica Billines, emailed the Agreement to her.

**OBER & PEKAS, P.L.L.C.**
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

32.     On information and belief, if the STD benefits are in fact subject to ERISA, then the Agreement is a relevant Plan document that must be disclosed.

33.     On information and belief, the fully insured LTD benefits through Prudential is an experience-rated contract where the premium costs were affected by, among other things, the number and size of claims.

34.     To qualify for STD benefits under the Plan, Ms. Fischer-Sibrel must meet the definition of "Disability." Ms. Fischer-Sibrel is considered Disabled under the Plan if she is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury." Further, Ms. Fischer-Sibrel must be under the continuous care of a physician, follow a prescribed course of treatment, have medical documentation that supports her disability, and have a 20% or more loss in her weekly earnings due to that sickness or injury. If Ms. Fischer-Sibrel is approved for STD benefits, she will receive 100% of her base weekly earnings for six weeks and 66 2/3% of her base weekly earnings for the next seven weeks. The maximum benefit period for STD benefits is 13 weeks.

35.     In order to return to work after an illness or injury under the STD Plan, an employee must obtain a fitness-for-duty statement from her doctor. The statement must detail medical restrictions, if any. This statement must be provided both to Prudential and the employee's manager prior to returning to work.

36.     If Ms. Fischer-Sibrel remains disabled beyond the 13-week STD period, she is eligible to receive LTD benefits. To qualify for LTD benefits, Ms. Fischer-Sibrel must be "unable to perform the material and substantial duties of [her] regular occupation" and "have a 20% or more loss of income," for the first 24 months. After 24 months, she must be "unable to perform the duties of any gainful occupation for which [she is] reasonably fitted by education, training, or experience." If approved for LTD benefits, Ms. Fischer-Sibrel would receive a monthly benefit of 60% of her base monthly earnings reduced by the amount of any other income benefits.

37.     The maximum benefit period for LTD benefits is the Social Security normal retirement age, which is age 67 for Ms. Fischer-Sibrel.

38.     According to MPG, Ms. Fischer-Sibrel was paid hourly and, as of her last day worked, received $31.16851/hour not including commissions and company profit-sharing.

39.     Ms. Fischer-Sibrel was actually a salaried employee, not an hourly employee.

40.     Under the Plan, Ms. Fischer-Sibrel was required to participate in a first appeal. Thereafter, she may participate in a second, voluntary appeal.

### Ms. Fischer-Sibrel's Employment and Multiple Claims for STD and LTD Benefits

41.     Ms. Fischer-Sibrel worked as a Regional Sales Executive for MPG. She first started working for MPG in June 2004 until leaving in 2008 due to company issues related to the recession. MPG rehired her in November 2010 after being recruited to return to the company based on her sales abilities.

42.     The Sales Executive position is responsible for sales of Manpower staffing services to clients. The Sales Executive achieves sales quota in an assigned territory and/or industry vertical by identifying, prospecting and securing new temporary, direct hire and HR services to medium size to fortune 500 companies. The Sales Executive is expected to leverage existing contact base, network and prospect for new opportunities and consistently apply superior salesmanship to win competitive opportunities.

43.     The Sales Executive position requires a Bachelor's degree or equivalent combination of work experience, and a minimum of 5-10 years of proven direct sales experience. In addition to experience, the job requires success in working in a fast-paced, highly competitive, deadline oriented environment, as well as an ability to engage and convince others into purchasing MPG's services.  Physical requirements include working in a typical office setting, as well as walking, standing, bending, carrying of light items, and driving an automobile. Travel to potential/existing client locations is required.

44.     Among the physical and travel demands associated with Ms. Fischer-Sibrel's job, she was required to generate significant revenue and achieve targeted, "ramp-up"

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

-7-

growth over the course of a year by recruiting new clients and fostering existing client relationships.

45.     Ms. Fischer-Sibrel was a top performer for MPG in 2004-2008.

46.     Ms. Fischer-Sibrel continued to be a top performer for MPG after her rehire in late 2010.

47.     In 2011, Ms. Fischer-Sibrel generated over $1.28 MIL in sales.

*"Flight Path 2:" The 2012 STD And LTD Claims*

48.     In 2012, Ms. Fischer-Sibrel continued her career success and was among the top five sales executives in the country. She closed 63 new deals for a total value of over $2.69 MIL.

49.     However, in 2012, Ms. Fischer-Sibrel's health began to decline unexpectedly and she began experiencing vitamin mal-absorption. Some of her symptoms included multiple infections that required antibiotic treatment, extreme fatigue, numbness, pain, and weakness. It was getting increasingly difficult for her to do her job, even with her flexibility to work away from the office.

50.     On or about July 18, 2012, Ms. Fischer-Sibrel applied for STD to investigate her worsening symptoms.

51.     Prudential initially approved the STD claim and began reviewing the medical documentation for ongoing eligibility.

52.     Shortly after receiving STD benefits in 2012, Ms. Fischer-Sibrel was diagnosed with Hypogammaglobulinemia ("hypogamma"), an autoimmune disease. This diagnosis explained at least some of her symptoms, including her fatigue and susceptibility to infections.

53.     Prudential took note of the autoimmune diagnosis and resulting extreme fatigue. Finding Ms. Fischer-Sibrel's return to work prognosis before the expiration of STD benefits to be "poor," Prudential approved the STD claim for additional time and began evaluating for LTD, which was set to begin, or "roll over," on October 14, 2012.

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

54.     In evaluating LTD eligibility, Prudential began "triaging" the claim and determining the appropriate "Flight Path," or "segmentation." Prudential's Disability Claims Manager ("DCM"), Dawn Trudell, recommended "Flight Path 4" on September 26, 2012.

55.     However, the following day and under the direction of a new DCM, Prudential held a clinical review with Prudential's Brian Burns, DCS, Maliea Brackett RN, Diana Mitchell MS CRC, and Dawn Snow, DCM/T. As a result of their clinical roundtable, Prudential noted: "Records document [claimant] is making some improvement, [and claimant] also feels she is improving. 10/16/12 [estimated return to work] date appears reasonable." As a result, Prudential downgraded Ms. Fischer-Sibrel's claim from "Flight Path 4" to "Flight Path 2."

56.     Following the Flight Path 2 determination, Prudential approved STD benefits through the maximum allowable period and issued the Initial LTD Decision, calculating Ms. Fischer-Sibrel's annual salary as $73,749.14. This approval resulted in her receiving one day of LTD benefits. Prudential further explained the Flight Path 2 decision in its LTD approval: "[Flight Path 2 is] [r]easonable [due to employee's] planned [return to work] but reports [returning to work] w/accommodations so further involvement may be needed to help facilitate this."

57.     Approving the LTD claim resulted in a referral to Team Lead John LaRosa for "sign-off," because the benefit approval exceeded the DCM's authorization limit. In the event Ms. Fischer-Sibrel was not to return to work as planned on October 16, 2012, Prudential would follow-up by obtaining a job description, requesting updated office visit notes to include the diagnostic testing that had been done and, once received, following-up in "OH," which Ms. Fischer-Sibrel believes is a type of roundtable or meeting forum to discuss claims.

58.     Ms. Fischer-Sibrel did return to work on October 16, 2012, but she only did so on a part-time basis until returning to full-time status on November 22, 2012. Prudential issued partial benefits for her part-time status and, thereafter, closed the claim.

59.     In Ms. Fischer-Sibrel's performance review at the end of 2012, her manager noted: "Felicity fell behind her ramp up target this year due to a leave of absents[sic] due to health. Before going out Felicity was in the top 5 of all executives in the country. I expect Felicity to get on track by the end of [first quarter 2013] and exceed her targets by the end of the year."

60.     Ms. Fischer-Sibrel stated her goal to continue to grow in the Sales Executive role and her hopes to win a trip to Cancun the following year. She remained optimistic about her future success and committed to excelling in her position at MPG.

### The 2013 STD Benefits Claim And Missing Relevant Documents

61.     After returning to work in late 2012, Ms. Fischer-Sibrel was still ill, but her ambition and determination to feel better propelled her back to work. However, she began to decline again, her symptoms unabated.

62.     Ms. Fischer-Sibrel officially requested to work remotely and to have reduced workdays (from 12 to 8 hours). Both requests were approved through MPG's Human Resources department.

63.     Ms. Fischer-Sibrel is informed and believes Prudential was aware of her work accommodations and diminishing health.

64.     Throughout the beginning of 2013, Ms. Fischer-Sibrel continued to undergo plasma infusions, which serve as replacement therapy for deficient immunoglobulin (IgG) levels. Despite work accommodations and infusions, 2013 continued to be a difficult year for Ms. Fischer-Sibrel with regards to her health.

65.     Ms. Fischer-Sibrel seemed to be getting sicker and was experiencing high blood pressure, so she went out on leave for a second time in 2013; she received STD benefits from June 10, 2013 – September 9, 2013.

66.     Inexplicably, Defendants have not disclosed its claims handling from Ms. Fischer-Sibrel's 2013 claim, which would have included FML and STD claims management notes and records.

-10-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

67.     During her leave period in 2013, Ms. Fischer-Sibrel underwent additional diagnostic testing, started subcutaneous plasma infusions at home, and attended a weeklong study at National Jewish Hospital in an effort to secure more effective treatment. She changed medications and returned from National Jewish Hospital with high hopes for improvement. She returned to work.

68.     As her manager described about 2013, "Felicity had a very difficult year personally. She was out for an extended period of FMLA. 2014 should be a much better year for her." Even still, Ms. Fischer-Sibrel brought in over $1.59 MIL in revenue and was expected to exceed her 2014 goals. While she was out on disability, her hard work paid dividends, and she was actually closer to reaching her annual goals than is reflected on the performance evaluation for that year.

69.     Despite the clear relevance of Ms. Fischer-Sibrel's 2013 FML/STD benefits claim as it pertains to her overall claim for STD and LTD benefits, Defendants have failed – despite multiple requests - to produce relevant documents from the 2013 claim. Ms. Fischer-Sibrel is informed and believes that Prudential's notes from this claim period include additional information about segmentation, as well as clinical reviews that are relevant to Prudential's conflict of interest and overall strategy and management of her 2014 claim.

*Prudential Denies The Third STD Claim Right Before Its Relationship With MPG Ends*

70.     Throughout the remainder of 2013 and into 2014, Ms. Fischer-Sibrel continued to work despite being ill. The advice of National Jewish Hospital proved unsuccessful in treating her hypogamma, and her symptoms persisted and worsened. Medications were not managing her symptoms, and they were interfering with her ability to do her job. She had several absences and used FML, and her manager knew how difficult it was becoming for her to do even the most fundamental of tasks, such as typing her leads into salesforce. Despite heroic efforts to work, and despite having her most lucrative year

-11-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

yet in terms of commissions, Ms. Fischer-Sibrel was heading towards another leave of absence by the end of 2014.

71.     Ms. Fischer-Sibrel also had a hospital stay and leave in early October 2014 for brachycardia, a symptom of her hypogamma treatment, but Defendants have not disclosed documents from this time period. Ms. Fischer-Sibrel is informed and believes she received FML and STD benefits during this October 2014 leave.

72.     Meanwhile, in a letter dated October 16, 2014, MPG announced its new partnership with Liberty Mutual to manage its Disability, Family Medical Leave, and Military Leave programs. MPG "chose Liberty Mutual because of their absence management expertise as well as their willingness to develop a process that best serves our employees." According to the announcement, Liberty Mutual would handle all claims filed on or after January 1, 2015, whereas Prudential would continue to handle all claims filed prior to January 1, 2015.

73.     If Prudential were to accept liability on a STD claim that "rolled over" into LTD, then Prudential would become financially responsible for paying the LTD claim, even though it would receive no future premiums from - and have no ongoing relationship with - MPG.

74.     In its October 16, 2014 letter, MPG stated the following about the transition to Liberty Mutual: "Your STD benefit will continue to be paid to you by ManpowerGroup and your benefit check will be distributed to you in the same manner in which you are currently receiving your paycheck (either via direct deposit or mail). Taxes and other deductions will continue to be deducted from your STD benefit."

75.     In answering the question, "What if I am about to transition to a long term disability claim?," MPG explained:  "Likewise, if you are on a short term disability leave with a date of disability that began prior to 1/1/2015, and your claim is about to transition to LTD, your STD/LTD disability claims will continue to be handled by Prudential."

-12-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

76.    If an MPG employee was "currently on both short term disability as well as a Family Medical Leave claim at the time of the carrier change on 1/1/2015, the disability will continue to be managed by Prudential, but the Family Medical Leave will transfer to Liberty Mutual."

77.    Due to her worsening symptoms, which were becoming intolerable, Ms. Fischer-Sibrel left work once again and applied for FML and STD benefits on or about December 2, 2014.

78.    On December 18, 2014, Prudential's Timothy McLean "inherited eligibility" from claim number 12024106, which he found to be reasonable, because Ms. Fischer-Sibrel was out of work for the same conditions as before.

79.    Mr. McLean found that Felicity's medical records supported certifying FML based on her "own serious medical condition" through March 28, 2015.

80.    However, Prudential sent the claim for a capacity/clinical review with Patricia Meyers, RN, who discounted medical evidence and relied on The Medical Disability Advisor (the "MDA") guidelines to recommend denying the STD claim. Ms. Meyers recommended the claim to "PAM."

81.    On January 15, 2015, Mr. McLean adopted Ms. Meyers' findings and took note that the Plan would be terminating effective January 1, 2015. He concluded it was reasonable to close "ABS."

82.    Prudential received additional medical evidence in the form of an Attending Physician's Statement ("APS") on January 23, 2015, and Mr. McLean subsequently conducted a "Pre OH SOAP" note. Ms. Meyers purportedly reviewed the additional information and, without analysis, concluded there were no additional examination findings to support loss of function.

83.    In a letter dated January 15, 2015, based almost entirely on Ms. Meyers' review, Prudential denied Ms. Fischer-Sibrel's STD claim (the "First STD Denial").

Prudential discounted her treating providers' assessments, credible complaints, past STD/LTD claim approvals, and treating providers' assessments that she could not work.

84.     Ms. Fischer-Sibrel is informed and believes Prudential denied STD benefits not based on the merits of her claim but in an effort to avoid financial liability.

85.     Outside of Prudential's desire to avoid liability on a potential LTD claim, there is no reasonable basis or justification for Prudential denying the 2014 STD claim while approving prior STD and LTD claims *based on the same medical conditions and symptoms*.

86.     Prudential denied the STD claim without conducting an adequate investigation.

87.     Ms. Fischer-Sibrel is informed and believes that Prudential in part failed to conduct an adequate investigation, because it presumed she might return to work as she had done in the past, and that any future disability claims would become Liberty Mutual's responsibility instead.

88.     Unfortunately for Ms. Fischer-Sibrel, she was unable to perform the material and substantial duties of her Regular Occupation – or any occupation – and could not return to work in any capacity after Prudential's denial. She had already received accommodations and pursued every possible treatment option known to her, including traveling out of state for medical care, in an effort to continue working. Her body had nothing left to give by the end of 2014.

### *Ms. Fischer-Sibrel's First Appeal*

89.     After retaining legal counsel, Ms. Fischer-Sibrel sent a request for all relevant documents to both Prudential and MPG in a letter dated March 25, 2015.

90.     On March 27, 2015, Prudential disclosed 91 pages in response to the request for documents. Prudential's disclosure was grossly incomplete and obviously sanitized.

91.     Ms. Fischer-Sibrel timely appealed the First Denial in a letter dated July 13, 2015 (the "First Appeal"). With her First Appeal, Ms. Fischer-Sibrel provided additional medical evidence, video interviews, and a detailed discussion of her medical conditions and

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

-14-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

why they were preventing her from work. She also requested that, based on the collective medical evidence, Prudential and/or MPG approve both STD and LTD benefits immediately, given that she was nearly a month into the LTD period when appealing.

### *Prudential's Second Denial of Both STD and LTD Claims*

92.     Upon receiving the First Appeal, Prudential began conducting an investigation with the intent to bolster its First Denial.

93.     Shortly after receiving the First Appeal, Prudential requested that Ms. Fischer-Sibrel complete an Activities of Daily Living ("ADLs") Questionnaire, which she completed and returned on July 31, 2015.

94.     After conducting a senior claims review with Scott Hall and Dr. Wadhwa on or about August 4, 2015, Prudential's Senior Appeals Specialist, Michael Jordan, ordered surveillance and an internal medicine physician review with Vice President and Medical Director, Jonathan Mittelman.

95.     The strategy set forth in the senior claims review was designed to support a denial of benefits, not to fairly consider the claim. The purpose of the ADLs Questionnaire was to undermine Ms. Fischer-Sibrel's credibility with surveillance, which Prudential hoped would demonstrate greater functionality than Ms. Fischer-Sibrel claimed on the Questionnaire.

96.     Ms. Fischer-Sibrel is informed and believes that Mr. Jordan's Team Lead, Andrea DeGroot, took part in strategizing claims handling, as well.

97.     In requesting surveillance, Mr. Jordan provided RCG and his SIU contact with information about Prudential's financial liability, which demonstrated Prudential's significant financial responsibility should it approve the claim. Mr. Jordan explained that STD benefits were to be paid from December 8, 2014-March 8, 2015; LTD benefits were to begin effective March 1, 2015; LTD benefits would endure until July 13, 2036; and the scheduled monthly benefit was $3,209.43.

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

98.     The surveillance conducted by vendor RCG, Inc. ("RCG") on August 15th, 20th, 21st, & 26th, 2015 corroborated Ms. Fischer-Sibrel's reported functionality as noted in her July 31, 2015 ADLs Questionnaire.

99.     But instead of finding the surveillance as evidence of Ms. Fischer-Sibrel's credibility, Prudential disregarded the surveillance because it did not support its goal of denying the claim. In fact, Plaintiff did not learn of the surveillance until reviewing later claim file disclosures, at which time she learned that Prudential had conducted surveillance and neglected to disclose the actual surveillance footage.

100.    Dr. Mittelman never personally examined Ms. Fischer-Sibrel and is not of an appropriate specialty to opine on her conditions. Nevertheless, he determined functionality based on his review. Unsurprisingly, Dr. Mittelman found  "no medically necessary restrictions," thereby recommending upholding denial of the claim.

101.    Dr. Mittelman does not possess the requisite qualifications to effectively comment on Ms. Fischer-Sibrel's disabling conditions; yet, he disagreed with the opinions of Ms. Fischer-Sibrel's treating providers.

102.    Dr. Mittelman had no reasonable basis to reject Ms. Fischer-Sibrel's treating provider assessments. By way of example, as one of her treating provider's letters dated February 9, 2016 letter noted, "we have personally seen this patient go from a vibrant professional to a woman who is struggling to even care for her children …There is no question that her reported symptoms are credible." Given Ms. Fischer-Sibrel's work history and return to work efforts over the years, Prudential had no reason whatsoever to discredit her symptoms.

103.    Dr. Mittelman ignored and overlooked critical parts of the medical records, cherry-picking portions that supported denial.

104.    As Vice President and Medical Director of Prudential, Dr. Mittelman has a direct financial incentive to deny claims, and that conflict of interest further degrades the validity of his opinion.

-16-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

105.    Prudential upheld its First Denial in a letter dated September 15, 2015 (the "Second STD Denial") and issued its first denial of LTD benefits in a letter dated September 15, 2015 (the "First LTD Denial") (collectively the "Second Denial").

106.    The Second STD Denial and First LTD Denial are both dated September 15, 2015, authored by the same appeals analyst, Michael Jordan, and are based on the same rationale verbatim.

107.    Among the many issues with the Second Denial, Prudential failed to assess Ms. Fischer-Sibrel's vocational abilities. Prudential did not even have a job description in the file; yet it concluded Ms. Fischer-Sibrel was able to perform her Regular Occupation. Prudential admittedly did not perform a "formal vocational assessment," or any vocational analysis for that matter.

108.    Ms. Fischer-Sibrel again requested relevant disclosures and received deficient, sanitized disclosures.

109.    Upon reviewing the deficient disclosures, Ms. Fischer-Sibrel's counsel determined that certain documents and pieces of evidence were missing, such as the surveillance video, which was not mentioned in the Second STD Denial and First LTD Denial. She also requested other missing, relevant documents and sent a follow-up letter to Prudential.

110.    Prudential provided some outstanding documents but refused to disclose others, such as the qualifications for its employees, Patricia Meyers, Timothy McLean, and Jonathan Mittelman.

111.    Although Prudential reported that an appeal of the LTD Denial was "voluntary" and Ms. Fischer-Sibrel had a right to file a lawsuit under ERISA, because Prudential had issued its first denial of LTD benefits, Plaintiff's counsel decided to exhaust administrative remedies on both claims out of an abundance of caution prior to filing a lawsuit.

112.    Prudential misrepresented the STD benefits as governed by ERISA.

-17-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

### *Ms. Fischer-Sibrel's Second, Voluntary STD Appeal And First LTD Appeal*

113.    On March 14 2016, Ms. Fischer-Sibrel filed her second, voluntary appeal permitted under the Plan for STD benefits (the "Second Appeal") and First LTD Appeal. She addressed the deficiencies in Prudential's review, provided additional medical evidence and supportive letters, and also indicated that she would be supplementing the Second Appeal with outstanding information, which she provided on March 31, 2016.

114.    Given that the record lacked any real vocational assessment, Ms. Fischer-Sibrel attended an in-person vocational assessment with Mark Kelman, M.S., C.R.C., C.V.E., a vocational expert. In his March 19, 2016 report, Mr. Kelman assessed that, "[g]iven the totality of her medical conditions and symptoms, this Consultant is of the opinion that she would not be employable in any capacity in the open labor market." He further opined that Ms. Fischer-Sibrel's necessity and use of opioid pain medications would preclude her from operating a motor vehicle – a key component of her job, as well as any occupation that would consider her based on her training, education, and experience.

115.    In the Second Appeal, Ms. Fischer-Sibrel also explained that the hypogamma and small fiber neuropathy diagnoses were symptomatic without successful treatment, and that she was facing additional diagnoses and medical findings. For example, she had stress fractures throughout her legs, which substantiated her bilateral leg pain. She also requested that if there was additional testing or information she could provide to perfect her claim and substantiate her symptoms, to please instruct her on what to provide.

116.    Still, Defendants denied the claim.

### *Defendants' Final Denials*

117.    Prudential issued its final denial of LTD benefits in a letter dated June 20, 2016 (the "Final LTD Denial"). Prudential drafted a final denial for MPG regarding the STD benefits, which MPG quickly approved with no substantive changes. The STD denial came after the LTD denial in a letter dated July 6, 2016 (the "Final STD Denial") (collectively the "Final Denials").

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

118.    In preparation of the Final Denials, Prudential gathered new evidence. It paid for a vocational assessment through vendor University Disability Consortium ("UDC"), which failed to address Dr. Kelman's report and unreasonably focused on the physical requirements of Ms. Fischer-Sibrel's job, discounting the cognitive requirements. Prudential also retained a new file review from Dr. Joseph Rea, a specialist in Occupational Medicine, through vendor MES Peer Review Services, paying over $5,000 for the review. Without authorization, Dr. Rea contacted Ms. Sibrel's treating providers directly and outside of Felicity's legal counsel's knowledge.

119.    The Final Denials are illogical and provide further evidence of Prudential's intent to deny Ms. Fischer-Sibrel's STD and LTD claims. Of the many issues, the Final Denials are highly adversarial, rely on new reasons for denial previously undisclosed, and provide no meaningful explanation as to why Ms. Fischer-Sibrel does not qualify for LTD benefits under the terms of the Plan.

120.    In fact, it is nearly impossible to ascertain what definition of Disability Prudential applied to Ms. Fischer-Sibrel's claims. Just in the Final Denials alone, Prudential used several undefined terms, faulting Ms. Fischer-Sibrel for not meeting ambiguous standards of "proof," such as failing to show: "verifiably significant impairment;" "medically necessary restrictions and limitations (a commonly used health claim term inapplicable to disability claims);" "significant sustained adverse impact from use of medicine;" "firmly supportable opinions;" "significant aberrations on physical examinations or diagnostics, so that no basis can be laid for impairment;" and "significant clinically confirmable findings."

121.    In the Final Denials, Defendants acknowledge that Ms. Fischer-Sibrel's stress fractures are indeed disabling, but because those fractures were not documented as of December 2014, she is ineligible for benefits: "[W]hile impairment from Ms. Fischer-Sibrel's regular occupation is medically supported as of November 17, 2015, continuous impairment since December 1, 2014, until that time is unsupported."

-19-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

122.    Ms. Fischer-Sibrel's medical conditions never improved and, in fact, have worsened since December 2014.

123.    Ms. Fischer-Sibrel is totally disabled from her Regular Occupation and Any Gainful Occupation for which she is reasonably fitted by training, education, and experience.

124.    Ms. Fischer-Sibrel continues to be disabled as defined by the Plan for LTD benefits eligibility.

125.    Ms. Fischer-Sibrel should be entitled to LTD benefits until she is 67 years old.

126.    Ms. Fischer-Sibrel's claims are subject to *de novo* review.

127.    Ms. Fischer-Sibrel exhausted her administrative remedies under the Plan, to the extent doing so was even a requirement.

128.    Ms. Fischer-Sibrel satisfied all of the jurisdictional prerequisites to filing a claim, and her claim is timely before this Court.

129.    On information and belief, Ms. Fischer-Sibrel may be entitled to additional benefits from MPG as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

130.    Ms. Fischer-Sibrel is entitled to seek any and all relief allowed pursuant to Arizona law and ERISA, including equitable remedies, in an effort to enforce her rights under the Plan.

**COUNT I**
**(Unpaid Wages under A.R.S. § 23-355)**
**(Defendant MPG)**

131.    All previous paragraphs are incorporated by reference.

132.    MPG is an employer and is subject to the wage laws of the State of Arizona.

133.    Ms. Fischer-Sibrel was MPG's employee for purposes of the STD Plan and as defined under Arizona law.

134. Ms. Fischer-Sibrel is informed and believes that the STD Plan is a payroll practice exempt from ERISA, 29 U.S.C. § 1002, et. seq.

135. ERISA provides that an "employee welfare benefit plan" shall not include: "Payment of an employee's *normal compensation*, out of the *employer's general assets*, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons…." 29 C.F.R. § 2510.3-1(b)(2) (emphasis added).

136. On information and belief, STD benefits are funded through MPG's general assets and are issued through its payroll system.

137. Because Ms. Fischer-Sibrel's STD benefits are exempted from ERISA, she would have a wage claim under state law under A.R.S. § 23-355. Under A.R.S. § 23-355, "if an employer… fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is *treble* the amount of unpaid wages." (emphasis added)

138. MPG failed to pay wages due to Ms. Fischer-Sibrel in violation of Arizona law.

139. MPG improperly classified its STD Plan as subject to ERISA.

140. MPG did not have a reasonable, good faith basis for upholding the termination of Ms. Fischer-Sibrel's STD benefits. The termination was contrary to previous determinations and the opinions of Ms. Fischer-Sibrel's treating providers. MPG relied exclusively on Prudential's "recommendation," and it made no attempt to solicit relevant medical evidence or in-person examinations to clarify Ms. Fischer-Sibrel's functional status.

141. Ms. Fischer-Sibrel had a reasonable expectation that she would receive STD benefits for the duration of the STD period and through the beginning of her LTD period, which would have commenced on March 1, 2015. Her medical conditions had not improved, and there was no change in her symptoms.

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

142.    Despite the coverage of Ms. Fischer-Sibrel's disabling conditions, MPG willfully and improperly terminated Ms. Fischer-Sibrel's STD benefits in breach of the Plan. This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

143.    Ms. Fischer-Sibrel is informed and believes that MPG and Prudential's determination was influenced by an improper conflict of interest. In a claim note, Prudential noted the Plan was terminating effective January 1, 2015. Ms. Fischer-Sibrel is informed and believes that the Agreement had been terminated and Prudential was no longer receiving fees for its services under the ASO.

144.    In terminating Ms. Fischer-Sibrel's STD benefits, Prudential ignored credible medical evidence, which supported her continuing eligibility for benefits, including critical medical records and forms from Ms. Fischer-Sibrel's treating providers. In bad faith and without investigation, MPG adopted Prudential's conclusions, causing serious harm to its employee.

145.    Although not a requirement for benefits, Ms. Fischer-Sibrel did provide objective medical evidence that was consistent with her complaints and supported her disability under the STD and LTD programs.

146.     Prudential's medical reviewers contradicted themselves and prior medical assessments, as well as misstated the medical evidence.

147.    Prudential's medical reviewers arbitrarily reached their opinions based on insufficient evidence or investigation. **They never personally evaluated Ms. Fischer-Sibrel** and reached arbitrary and speculative conclusions that were not substantiated by the record.

148.    Prudential cherry-picked Ms. Fischer-Sibrel's medical records to create a selective and incomplete rendition of Ms. Fischer-Sibrel's medical history.

149.    Prudential, MPG, and its reviewers improperly failed to credit Ms. Fischer-Sibrel's subjective complaints in determining whether she was disabled under the STD Plan.

-22-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

150.    Prudential and MPG failed to explain why it credited its medical reviewers over Ms. Fischer-Sibrel's treating providers and unreasonably relied on the medical reviewers assessments when it knew they had conducted either inadequate or biased reviews. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

151.    Prudential and MPG unreasonably credited unreliable evidence over reliable evidence in its administration and review of Ms. Fischer-Sibrel's STD claim, making its determination contrary to the clear weight of the medical evidence.

152.    MPG deliberately adopted and conducted a biased and inadequate investigation. It unreasonably failed to review all of the medical evidence. It further permitted the use of reviewers whom it should have known to be unreasonable and unqualified to evaluate Ms. Fischer-Sibrel's claims, such as Dr. Rea and Prudential's own Vice President, Dr. Mittelman.

153.    Because of Prudential's improper actions and MPG's rubberstamping of Prudential's improper conduct, Ms. Fischer-Sibrel was denied a full and fair review of her claims.

154.    MPG intentionally, willfully, and unreasonably denied Ms. Fischer-Sibrel's STD benefits.

155.    On information and belief, Prudential has not been properly conferred with discretionary authority to interpret the STD Plan and to make eligibility determinations under the STD Plan.

156.    On information and belief, Prudential has a practice of terminating STD claims before the expiration of the 13-week period, specifically once it learned that MPG was changing carriers to Liberty Mutual effective January 1, 2015, so that employees would not become eligible for LTD benefits.

-23-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

157.    Ms. Fischer-Sibrel has been damaged as a direct result of MPG's failure to pay her STD benefits.

158.    Ms. Fischer-Sibrel is entitled to treble damages for the amount of her improperly withheld STD benefits under A.R.S. § 23-355.

159.    Ms. Fischer-Sibrel is entitled to compensatory damages, as well as her attorneys' fees and costs pursuant to A.R.S. § 12-341.01, and also other damages to be determined at trial.

**COUNT II**
**(Recovery of LTD Plan Benefits)**
**(Defendants Prudential and the Plan)**

160.    All previous and subsequent paragraphs are incorporated by reference.

161.    The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.  Defendants are the Plan, Plan administrators, or Plan fiduciaries of the Plan under ERISA.

162.    The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Fischer-Sibrel is no longer disabled under the terms of the Plan.

163.    Ms. Fischer-Sibrel became disabled in 2014 and continues to be disabled. She is unable to perform the material and substantial duties of any gainful occupation under the terms of the Plan.  She has claimed the benefits under the Plan to which she is entitled.

164.    Ms. Fischer-Sibrel reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 67 or until she was no longer disabled.

165.    Despite the coverage of Ms. Fischer-Sibrel's disability, Prudential has improperly terminated LTD benefits to Ms. Fischer-Sibrel in breach of the Plan and ERISA.  Prudential's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

166.    Prudential committed almost every wrongful action conceivable to justify the Court reducing the level of discretion afforded to Prudential. In light of Prudential's

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

structural conflict of interest and wholesale and flagrant procedural violations of ERISA, Ms. Fischer-Sibrel should be entitled to *de novo* review.

167.    Prudential's structural conflict of interest manifests in the form of "flight paths;" instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Plaintiff is informed and believes that Prudential makes claims decisions based on the claims resources and financial risk it faces on certain claims. Prudential managed Ms. Fischer-Sibrel's claim early on by using segmentation, or Flight Paths, but then once Ms. Fischer-Sibrel retained legal counsel, such references were noticeably absent from disclosures. Despite several requests for what this means, and despite its clear relevance to Prudential's handling of Ms. Fischer-Sibrel's claim, Prudential has not disclosed relevant documents related to its "flight paths" or "segmentation."

168.    Despite approving claims for STD and LTD benefits in 2012, 2013, and 2014, Prudential was determined to deny Ms. Fischer-Sibrel's claim in 2014. It failed to provide Ms. Fischer-Sibrel with a description of any additional material or information "necessary" to "perfect the claim" and to do so "in a manner calculated to be understood by the claimant." Prudential "hid the ball" from Ms. Fischer-Sibrel by failing to advise her of what was needed to approve the LTD claim, instead changing its reasons for denial. Initially, it found Ms. Fischer-Sibrel had no restrictions and limitations; by the Final Denials, it conceded she had medically supported restrictions and limitations preventing her from performing her Regular Occupation as of November 2015 but she could work as of December 2014.  It relied on evidence that Ms. Fischer-Sibrel could never address, such as the vocational assessment by UDC and Dr. Rea's report, which involved reaching out to her treating providers without her knowledge and ability to facilitate responses. Prudential's adversarial actions precluded Ms. Fischer-Sibrel from responding to Prudential's rationale for denial at the administrative level.

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

169.    Prudential wrongfully denied Ms. Fischer-Sibrel's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

170.    Prudential did not properly consider all of the available evidence when denying Plaintiff's benefits. In doing so, Prudential failed to conduct a full and fair review. By way of example, it failed to conduct an adequate investigation before denying the STD claim by ascertaining ADLs or all of the medical evidence.

171.    Prudential blatantly misstated medical evidence for its own financial benefit. It overstated surveillance reports and, through its file reviews, relied on findings that constitute "clearly erroneous findings of fact" in making benefit determinations. By way of example, Drs. Mittelman's and Rea's file reviews are littered with erroneous statements regarding testing results. Prudential then relied on erroneous factual findings to deny benefits. Indeed, Prudential abused its discretion by basing its decision on unreliable and inaccurate information in many respects. When confronted with this knowledge through the appeals process, Prudential failed to rectify its inaccuracies.

172.    Prudential tainted its medical file reviewers in the review process by giving the reviewers inaccurate information regarding Ms. Fischer-Sibrel, while also failing to provide its reviewers with all of the relevant evidence.

173.    Prudential provided Dr. Rea with Dr. Mittelman's report and Nurse Meyers' review and other inaccurate information involved in the First Denial, which was a procedural violation of ERISA. It did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Ms. Fischer-Sibrel's administrative appeals process, or at least used employees who were managed by the same person(s) and who were orchestrating the denial according to undisclosed flight paths. *See* *29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

174.    Prudential failed to consult with health care professionals who had appropriate training and experience in the field of medicine involved in the medical judgment that was being rendered. *See* 29 C.F.R. § 2560.503-1(h)(3), 3(iii). None of Prudential's file reviewers had board certifications appropriate to evaluating hypogamma, small fiber neuropathy, and stress fractures, among other diagnoses.

175.    Prudential routinely emphasized reports that favored a denial of benefits while deemphasizing other reports that suggested a contrary conclusion. In its internal notes, Prudential's denials are driven by its own biased evidence and reviews, not by the medical evidence provided.

176.    Prudential failed to investigate Ms. Fischer-Sibrel's claim adequately, including its failure to conduct an in-person medical evaluation, which would have been beneficial to a full and fair review of Ms. Fischer-Sibrel's claim. Prudential had ample opportunity to conduct an IME, but it depended instead on unreliable evidence to deny Ms. Fischer-Sibrel's STD and LTD benefits. It then conducted surveillance on appeal in violation of ERISA.

177.    Prudential abused its discretion by not conducting an adequate investigation prior to denying the STD claim.

178.    Prudential ordered surveillance based on its financial exposure, which demonstrates its abuse of discretion and which also constitutes a breach of fiduciary duty.

179.    Prudential has unreasonably withheld relevant documents throughout the entire claim and consistently managed the claim poorly, including but not limited to complete internal notes and the qualifications of its employees. Prudential's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrates its abuse of discretion and improper claims handling.

-27-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

180. Prudential failed to properly consider the opinions of Ms. Fischer-Sibrel's treating and examining physicians. It also failed to reasonably consider Ms. Fischer-Sibrel's reported symptoms and limitations, and side effects of her medications, in determining whether she was disabled under the Plan. Indeed, Prudential acted arbitrarily and capriciously when it selectively reviewed Ms. Fischer-Sibrel's medical records, relying only on those portions of her medical records that supported a denial of benefits.

181. In terminating Ms. Fischer-Sibrel's LTD benefits, Prudential completely disregarded evidence of Ms. Fischer-Sibrel's worsening condition. It is uncontroverted – both in Prudential's internal notes and the medical records - that Ms. Fischer-Sibrel's conditions had not changed or improved. In fact, Prudential acknowledged her worsened state, finding that she was disabled as of November 2015, but just not back to December 2014. Prudential also knew from past claims from 2012-2014 about Ms. Fischer-Sibrel's continuing struggles and attempts to seek treatment without success for her conditions.

182. Prudential improperly demanded objective medical evidence of Ms. Fischer-Sibrel's conditions and pain and engrafted terms onto the Plan.

183. On information and belief, the file reviewers and vendors were financially incentivized to deny Ms. Fischer-Sibrel's claim. MLS, RCG, and UDC are biased companies, which frequently provide insurance companies with reviews that are favorable for the denial of claims. Prudential's physician reviewer, Dr. Rea, was provided by MLS. And routinely provides favorable reports for insurance companies.  Prudential's Vice President, Dr. Mittelman, has a direct financial incentive to deny claims. Prudential knew or should have known that MLS, UDC, and RCG are biased companies. As a company-wide practice, Prudential uses these vendors, because it knows they provide reviews that are favorable to the denial of claims.

184. Prudential used MLS, UDC, and RCG in Ms. Fischer-Sibrel's claim, because it knew that the reviews would be unfavorable for the approval of her benefits.

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

185. Prudential unreasonably failed to ensure that its vendors provided unbiased and/or qualified reviewing doctors for purposes of its claims administration.

186. Dr. Rea had no reasonable basis for his recommended restrictions and limitations. His report was borderline incoherent and in complete abandonment of the Plan.

187. On information and belief, Dr. Rea has been retained by Prudential on numerous occasions to conduct claims reviews or other evaluations.

188. Both Drs. Rea and Mittelman have a history of bias against claimants, which demonstrate the lack of objectivity and reliability of their reports.

189. The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

190. None of Prudential's reviewing physicians ever set forth any substantive reasons why Ms. Fischer-Sibrel's doctors' opinions that she could not work were incorrect or unreliable.

191. Prudential failed to explain why it credited the physician reviewers over Ms. Fischer-Sibrel's treating physicians.

192. Ms. Fischer-Sibrel is informed and believes the peer reviewers were not given the Plan or other important records for reaching its decision that Ms. Fischer-Sibrel could perform sedentary work.

193. The peer reviewers never spoke to Ms. Fischer-Sibrel, and they never conducted an in-person evaluation of her.

194. Given Ms. Fischer-Sibrel's medical conditions and symptoms, there is no way she can perform the material and substantial duties of her Regular Occupation, or Any Gainful Occupation.

195. Ms. Fischer-Sibrel has exhausted her administrative remedies.

196. Ms. Fischer-Sibrel has afforded Prudential every opportunity to act prudently and to fairly consider her claim but instead, Prudential pursued a predetermined flight path

**OBER & PEKAS, P.L.L.C.**
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

to deny Ms. Fischer-Sibrel's STD and LTD claims, regardless of the medical evidence provided on appeal.

197.    Prudential is not entitled to an arbitrary and capricious standard of review of their decision in this action, so Ms. Fischer-Sibrel's claims are entitled to *de novo* review with a bench trial on the record.

198.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Ms. Fischer-Sibrel is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

199.    Ms. Fischer-Sibrel is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

200.    Pursuant to 29 U.S.C. § 1132(g), Ms. Fischer-Sibrel is entitled to recover her attorneys' fees and costs incurred herein from Prudential.

201.    Ms. Fischer-Sibrel is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT III**
**(Breach of Fiduciary Duty)**
**(Defendant Prudential)**

202.    All previous and subsequent paragraphs are incorporated by reference.

203.    Under 29 U.S.C. §§ 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

204.    Ms. Fischer-Sibrel has "other equitable relief" available to her in several forms, including but not limited to surcharge. A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position she would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

encompassing any violation of a duty imposed upon that fiduciary. In equity, this Court must make Ms. Fischer-Sibrel whole following Prudential's breach of trust" and mold the relief to protect the rights of the beneficiary. Therefore, the Court has broad discretion to fashion appropriate relief.

205.    Prudential is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Fischer-Sibrel. Under 29 U.S.C. § 1104(a), Prudential is required discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Under ERISA, which is founded in trust principles, Prudential is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

206.    In multiple ways throughout the administration of Plaintiff's claim, Prudential breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3). Prudential's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Prudential's claims handling was discharged imprudently and caused Ms. Fischer-Sibrel harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B). Ms. Fischer-Sibrel had to borrow money, including racking up credit card debt, in order to make ends meet, and the financial stress of losing her benefits seriously jeopardized her marriage. Ms. Fischer-Sibrel now owes significant attorneys' fees because of Prudential's breaching conduct. Prudential arbitrarily and capriciously denied Ms. Fischer-Sibrel's benefits, which constitutes a breach of fiduciary duty. To the extent that Prudential's arbitrary and capricious denial of benefits caused Ms. Fischer-Sibrel harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), that harm is recoverable under 29 U.S.C. §§ 1132(a)(3).

207.    Prudential's structural conflict of interest manifests in the form of "flight paths," but Plaintiff is informed and believes the use of flight paths constitutes a breach of fiduciary duty. Prudential failed to discharge their duties solely in the interest of Ms. Fischer-Sibrel as a Plan participant by using "flight paths." Plaintiff is informed and believes that

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

"flight paths" resulted from Prudential's company-wide efforts to deny claims based on financial liability instead of merits. As an institution, Prudential uses claim payment reduction goals and cost containment measures as a method of profit-making for the company. In so doing, Prudential unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion to attain its numerical reduction goals. Prudential's cost containment measures are consistent with and a part of a corporate-wide plan and scheme.

208.    On information and belief, Prudential allowed its efforts to increase profitability to directly impact its handling of Ms. Fischer-Sibrel's STD and LTD claims. By denying Ms. Fischer-Sibrel's STD claim in 2014, Prudential saved itself significant liability.

209.    On information and belief, Prudential did not have proper safeguards to ensure that its focus on profitability did not affect how its employees handled, evaluated, and assessed claims.

210.    Prudential offers eligible employees participation in the Prudential "Leveraging Opportunities Program Long Term Incentive Award Plan" and, on information and belief, offers other incentive, or "bonus" programs to award employees for their "alignment with the actual savings and operational goals achieved" by Prudential.

211.    On information and belief, Prudential instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals, including but not limited to Prudential employees Angelica Billines, Michael Jordan, Jonathan Mittelman, and Team Leads, such as Andrea DeGroot.

212.    Ms. Fischer-Sibrel is informed and believes that Prudential's DCMs, Appeal Specialists, Team Leads, Medical Directors, Clinical Reviewers, "Senior" and "Complex Claims" employees, and others are trained in handling "high risk" claims, "flight path" cases, "senior claims review," and in administering claims in the best interests of Prudential, not Plan participants. Ms. Fischer-Sibrel is informed and believes that Prudential incentivizes its employees to "manage" claims in Prudential's best interests, including but not limited to her claims. Prudential's flight path arrangement is a breach of fiduciary duty

-32-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

requiring appropriate equitable relief following discovery on the meaning of "flight paths" as it relates to Ms. Fischer-Sibrel's STD and LTD claims handling.

213.    Prudential was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Fischer-Sibrel's benefits for its own profit.

214.    Prudential engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, and these violations are by definition under 29 U.S.C. § 1132(a)(3) conduct that can be enjoined by this Court.

215.    The claim file is replete with examples of Prudential acting with malice and in bad faith against Ms. Fischer-Sibrel, which constitutes a violation of its fiduciary duty.

216.    ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Fischer-Sibrel by Prudential's breach of fiduciary duty violations.

217.    As a direct and proximate result of the breaches of fiduciary duty, Ms. Fischer-Sibrel suffered actual financial harm and incurred financial expense.

218.    Ms. Fischer-Sibrel is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

219.    Pursuant to 29 U.S.C. § 1132(g), Ms. Fischer-Sibrel is entitled to recover her attorneys' fees and costs incurred herein from MPG and Prudential.

220.    Ms. Fischer-Sibrel is entitled to enjoin any act or practice by Prudential, which violates ERISA or the Plan, and/or she is entitled to seek other appropriate equitable relief that is traditionally available in equity.

**COUNT IV**
**(Breach of Fiduciary Duties)**
**(Defendant MPG)**

221.    All previous and subsequent paragraphs are incorporated by reference.

222.    MPG, as Plan Administrator, is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Fischer-Sibrel. Under 29 U.S.C. § 1104(a), MPG is required discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29

-33-

U.S.C. § 1104(a). Under ERISA, which is founded in trust principles, MPG is required to act in the best interests of Plan participants.

223.  MPG offers STD and LTD benefits to employees such as Ms. Fischer-Sibrel.

224.  MPG both self-insures and fully insures the Plan and has, at various times, used insurance companies besides Prudential. MPG has not to date disclosed the Agreement with Prudential, which is identified in the claim file and which would outline the fiduciary obligations of each Defendant under the Plan.

225.  Ms. Fischer-Sibrel is informed and believes MPG acted imprudently by hiring Liberty Mutual and, in doing so, failing to oversee Prudential's claims administration for ongoing STD and LTD claims. MPG, as the Plan Administrator, knew or should have known that Prudential handled claims against the best interests of its employees and not pursuant to the Plan. Ms. Fischer-Sibrel provided appeals to MPG and notified MPG that Prudential was not providing relevant documents, which is ultimately the Plan Administrator's responsibility.

226.  On information and belief, MPG, as the Plan Administrator, did not periodically review Prudential's actions as a delegated fiduciary under the Plan.

227.  On information and belief, the Plan Administrator's failure to periodically review Prudential's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

228.  On information and belief, if the Plan Administrator did periodically review Prudential's actions as a delegated fiduciary under the Plan, then its periodic review was unreasonable and constituted a breach of fiduciary duty.

229.  On information and belief, the Plan Administrator is liable for Prudential's actions, because the Plan Administrator violated its fiduciary obligations by continuing Prudential's delegation as Plan Administrator and/or by failing to protect Plan participants from Prudential's conflicted and adversarial claims handling.

-34-

OBER & PEKAS, P.L.L.C.
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

230.   Ms. Fischer-Sibrel was harmed by MPG's failure to oversee Prudential's conduct. Ms. Fischer-Sibrel is informed and believes Prudential has targeted claims under the Plan, including Ms. Fischer-Sibrel's, and MPG's failure to protect its participants is a breach of fiduciary duty.

231.   After the appeals closed, Ms. Fischer-Sibrel asked MPG, through its legal counsel, to review Prudential's denial of LTD benefits based on Prudential's procedural irregularities, which it has authority to do under the Plan. MPG refused.

232.   Ms. Fischer-Sibrel is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

233.   Pursuant to 29 U.S.C. § 1132(g), Ms. Fischer-Sibrel is entitled to recover her attorneys' fees and costs incurred herein from MPG and Prudential.

234.   Because MPG breached its fiduciary duties, Ms. Fischer-Sibrel was actually harmed.

235.   Ms. Fischer-Sibrel relied on the Plan and MPG to her detriment.

236.   Ms. Fischer-Sibrel is entitled to enjoin any act or practice by Defendants, which violates ERISA or the Plan, and/or she is entitled to seek other appropriate equitable relief that is traditionally available in equity.

**COUNT V**
**(Intentional Infliction of Emotional Distress)**
**(MPG)**

237.   All previous paragraphs are incorporated by reference.

238.   MPG offers and administers STD benefits for the benefit of its employees, including Ms. Fischer-Sibrel.

239.   Ms. Fischer-Sibrel was a loyal employee to MPG for many years, and she trusted in MPG to provide the benefits she bargained for as part of her employment.

240.   MPG willfully denied Ms. Fischer-Sibrel's STD payments, which resulted in its own financial gain by avoiding payment of STD benefits and commissions.

241.    MPG's actions caused significant harm to Ms. Fischer-Sibrel, and MPG was aware that its actions would cause her harm. MPG's improper actions in denying STD benefits have exacerbated Ms. Fischer-Sibrel's conditions and put additional stress on her.

242.    Ms. Fischer-Sibrel has been emotionally, physically, and financially devastated as a result of MPG's improper conduct. She has suffered humiliation, anxiety, depression, and physical symptoms and loss of enjoyment of life because of MPG.

243.    MPG's actions against Ms. Fischer-Sibrel were extreme and outrageous. It had no justifiable basis outside of malice and its own financial gain to uphold Prudential's denial of STD benefits.

244.    MPG undertook such outrageous actions intentionally or with utter and reckless disregard as to whether or not Ms. Fischer-Sibrel would suffer severe distress.

245.    As a proximate result of MPG's actions, Ms. Fischer-Sibrel has been damaged and is entitled to general damages to be determined at trial.

246.    MPG's actions were fraudulent, malicious, and oppressive, so as to justify an award of punitive damages.

**WHEREFORE**, on all claims, Ms. Fischer-Sibrel prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.    For her wrongfully withheld wages under the STD Plan (including all past STD benefits);

B.    For treble damages for wrongfully-withheld STD Plan benefits;

C.    For an award of general damages for Plaintiff's emotional distress;

D.    For an award of punitive damages to be determined at trial;

E.    For benefits due and owing under the LTD Plan;

F.    Any statutory penalties that may be available to Ms. Fischer-Sibrel as a result of Defendants' violations of ERISA;

**OBER & PEKAS, P.L.L.C.**
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

-36-

G.      All other equitable relief that is proper as a result of Defendants' breach of fiduciary duties;

H.      An award of Ms. Fischer-Sibrel's attorneys' fees and costs incurred herein;

I.      An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

J.      For such and further relief as the Court deems just, equitable, and reasonable.


Dated this 22nd day of February 2017,

OBER & PEKAS, PLLC


By: *s/ Erin Rose Ronstadt*
        Erin Rose Ronstadt
        Kevin Koelbel
        Attorney for Plaintiff

**OBER & PEKAS, P.L.L.C.**
3030 N. 3rd Street, Ste. 1230
Phoenix, AZ 85022
(602) 277-1745

-37-